1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    BRIAN DIAZ,                          CASE NO. C21-1285JLR

11                        Petitioner,      ORDER DENYING
                                           PETITIONER'S MOTION
12          v.                             UNDER 28 U.S.C. § 2255 AND
                                           PETITIONER'S THIRD MOTION
13    UNITED STATES OF AMERICA,            TO APPOINT COUNSEL

14                        Respondent.

15                          I.    INTRODUCTION

16          Before the court are *pro se* Petitioner Brian Diaz's motion to vacate, set aside, or

17    correct his sentence pursuant to 28 U.S.C. § 2255 (Mot. (Dkt. # 1); Reply (Dkt. # 11);

18    Preface to Reply (Dkt. # 12)) and third motion to appoint counsel (3d Mot. to Appoint

19    (Dkt. # 10)).  Respondent the United States of America ("the Government") opposes Mr.

20    Diaz's § 2255 motion.  (Resp. (Dkt. # 7).)  The court has considered the motions, all

21    submissions filed in support of and in opposition to the motions, the relevant portions of

22    //

ORDER - 1

1    the record, and the applicable law.  Being fully advised, the court DENIES Mr. Diaz's

2    § 2255 motion and DENIES Mr. Diaz's third motion to appoint counsel.

3                                    **II.    BACKGROUND**

4          In January 2019, federal agents arrested Mr. Diaz after an investigation revealed

5    that he used filesharing software to trade child sexual abuse imagery over the internet.

6    (*See* Plea Agreement (CR Dkt. # 32); Indictment (CR Dkt. # 14).[1])  On November 20,

7    2019, Mr. Diaz pled guilty to one count of possession of child pornography in violation

8    of 18 U.S.C. § 2252(a)(4)(B), (b)(2).  (*See* Plea Agreement at 1.)  Although he was

9    initially released on bond following his arrest, the court revoked his bond just before his

10   sentencing hearing after a series of bond violations that culminated in his arrest while in

11   possession of a loaded firearm and an unauthorized digital device.  (*See generally* CR

12   Dkt.; 8/21/20 Min. Entry (CR Dkt. # 80) (ordering Mr. Diaz detained); 9/14/20 Min.

13   Entry (CR Dkt. # 87) (revoking bond).)

14         The U.S. Probation Office found Mr. Diaz's total offense level to be 28 based on

15   several factors, including:  a base offense level of 18; a two-level upward deviation for

16   material involving minors; a four-level upward deviation for material that portrays

17   sadistic or masochistic conduct or other violence; a two-level upward deviation for an

18   offense that involved the use of a computer to commit the offense; a five-level upward

19   deviation for an offense that involved more than 600 images; and a three-level downward

20   deviation for acceptance of responsibility.  (*See* Am. Presentence Investigation Report

21

22         [1] The court uses "Dkt." to refer to docket entries in this case and "CR Dkt." to refer to docket entries in Mr. Diaz's criminal case, *United States v. Diaz*, CR19-0038JLR.

("Am. PSR") (CR Dkt. # 85) (sealed) at 6-7 (noting that his criminal history category was I).) Thus, it calculated the applicable sentencing guidelines range to be 78-97 months. (*See id.* at 12.) Pursuant to the terms of the plea agreement, however, the Government agreed to a three-level downward variance for Mr. Diaz's participation in a psychosexual evaluation, which established an advisory guideline range of 57-71 months. (*See id.*)

On September 15, 2020, the court sentenced Mr. Diaz to thirty-six months of imprisonment followed by ten years of supervised release. (*See* 9/15/20 Min. Entry (CR Dkt. # 89); Judgment (CR Dkt. # 90); Am. Judgment (CR Dkt. # 92); *see also* Ex. 1 to Resp. ("Sentencing Tr.") (Dkt. # 7-1) at 25:19-23 (noting that the court considered the guideline range to be 57-71 months).) He did not appeal his conviction and remains in federal custody as of the date of this order, with a projected release date of April 26, 2023. (*See generally* CR Dkt.; Mot.; Resp. at 5.)

Mr. Diaz filed the instant 28 U.S.C. § 2255 motion on September 20, 2021. (*See generally* Mot.[2]) He asserts eight grounds for reducing his sentence,[3] including:

> 1. "Counsel failed to challenge the number of images. The number cited during sentencing, and used as a factor in sentencing, was 12,000 + but the actual number was round about 2,300." (Mot. at 4.)
>
> 2. "My brother, Daniel Diaz and [my mental health therapist, Aaron] Knell told me they did not make various comments in the PSR. I was told by counsel it was too late to make additional corrections. It had only been two days." (*Id.* at 5.)

---

[2] The court cites to the page numbers appearing in the CM/ECF header when referring to Mr. Diaz's motion.

[3] Mr. Diaz characterizes his requested relief as a "[r]eduction of sentence and/or probation time." (Mot. at 16.)

3. "No comments from [his mental health counselor] Lonnie Kaman should have been included; she should never have been contacted. I never signed a release of information document with her; and all of our sessions were private – paid for by me – and therefore confidential." (*Id.*)

4. "[Counsel] told me he would challenge the enhancements listed in the PSR; and challenged only a few errors and a single comment by Kaman during my first round of corrections. When I asked why he failed to challenge the enhancements, he told me the time to do it was at sentencing which is – as I now know – far too late. The judge had already seen the PSR complete with errors and enhancements." (*Id.* at 5-6.)

5. "Counsel failed to have allegations made by [the person he believes to have been an anonymous source] . . . or one of her lickspittles expunged from my record. . . . I prevailed in all hearings; but the damage to my otherwise excellent record on home detainment was irreparably damaged and contributed greatly to [Magistrate Judge] Tsuchida's decision to later sign an arrest warrant for simply not appearing to provide a [urinalysis] sample." (*Id.* at 6-7.)

6. "Counsel failed to challenge allegations with-out [sic] merit made by [my Pretrial Officer] until said allegations had been seen by both Magistrate [Judge] Brian Tsuchida and Judge Robart." (*Id.* at 7.)

7. "Counsel failed to challenge the statement I made to [Homeland Security Investigations ("HSI")] agents on the night of my arrest." (*Id.* at 8.)

8. "Counsel failed to challenge jurisdiction despite my status as a public figure who served on the Gold Bar City Council for 3 years and was still a member at the time of my arrest." (*Id.* at 8.)

Mr. Diaz categorizes each of the above grounds as instances of ineffective assistance of counsel. (*See* Mot. at 4.)

Since filing his § 2255 motion, Mr. Diaz has filed three motions requesting that the court appoint counsel to represent him in this action. (*See* Mot. to Appoint (Dkt. # 5); 2d Mot. to Appoint (Dkt. # 8); 3d Mot. to Appoint.) The court denied his first two requests, finding that "discovery and an evidentiary hearing are unnecessary" and that

Mr. Diaz had not demonstrated "that the 'interests of justice' warrant appointment of counsel."  (*See* 12/15/21 Order (Dkt. # 9); *see also* 11/10/21 Order (Dkt. # 6).)  Because Mr. Diaz submitted his third motion to appoint counsel contemporaneously with his reply brief (*see generally* Dkt.), the court addresses his third motion to appoint counsel in the instant order.

### III.   ANALYSIS

The court begins by addressing the legal standard for motions under 28 U.S.C. § 2255.  It then discusses whether an evidentiary hearing is necessary before turning to its analysis of Mr. Diaz's ineffective assistance of counsel claims and the issue of whether Mr. Diaz is entitled to a certificate of appealability.  The court concludes by discussing Mr. Diaz's third motion to appoint counsel.

**A.   Legal Standard for Motions Under 28 U.S.C. § 2255**

A petitioner seeking relief under 28 U.S.C. § 2255 must prove the existence of an error rendering his conviction unlawful.  *See Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997); *see also Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938); *Bell v. United States*, No. C19-2018JCC, 2020 WL 3542503, at *2 (W.D. Wash. June 30, 2020).  A prisoner in custody for a federal law violation may move to vacate, set aside, or correct the sentence under four circumstances:  where (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).
//

Pursuant to § 2255(f), a petition for habeas relief must be brought within one year of the date on which the judgment of conviction became final. *See id.* § 2255(f)(1).

Mr. Diaz seeks to reduce his sentence pursuant to § 2255, asserting that he was denied his Sixth Amendment right to effective assistance of counsel at sentencing based on eight alleged errors by counsel. (*See generally* Mot.)  Because he is currently incarcerated, he meets § 2255's "custody" requirement. *See Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002).  Moreover, the court finds that Mr. Diaz timely filed the instant motion.  His judgment of conviction became final on September 29, 2020, which was 14 days after entry of judgment on September 15, 2020, and he filed the instant motion on September 20, 2021.[4] *See* Fed. R. App. P. 4(b)(1); 28 U.S.C. § 2255(f); *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001); (*see also* Judgment; Mot.).  Accordingly, Mr. Diaz's motion is properly before the court.

**B.    Evidentiary Hearing**

As a preliminary matter, the court determines that an evidentiary hearing on the merits of this matter is unnecessary.  Under § 2255, the court must hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).  However, "[n]o hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably

---

[4] Mr. Diaz did not appeal his conviction, nor is his motion based on newly discovered facts or newly-issued Supreme Court case law.  (*See generally* Mot.)  Accordingly, § 2255(f)(1) governs the timeliness of his motion.

1   incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*,

2   878 F.2d 1156, 1158 (9th Cir. 1989); *United States v. Howard*, 381 F.3d 873, 879 (9th

3   Cir. 2004) (holding that no evidentiary hearing is required unless the petitioner raises

4   "detailed and controverted issues of fact").  Here, the court concludes that the detailed

5   record in this matter is a sufficient basis on which to decide Mr. Diaz's claims and

6   determine that he is entitled to no relief.   Accordingly, the court exercises its discretion

7   not to hold an evidentiary hearing.  *See Shah*, 878 F.2d at 1158.

8   **C.   Ineffective Assistance of Counsel**

9       Mr. Diaz's ineffective assistance of counsel claims[5] are controlled by *Strickland v.*

10  *Washington*, 466 U.S. 668 (1984).  To show ineffective assistance under *Strickland*, a

11  petitioner must prove that (1) counsel's performance was deficient; and (2) the deficient

12  performance prejudiced the defense.  *Id.* at 688, 694.  To establish that counsel's

13  performance was deficient, a petitioner must show that counsel's performance "fell below

14  an objective standard of reasonableness."  *Id.* at 688.  The court considers whether, "in

15  light of all the circumstances, the identified acts or omissions were outside the wide range

16  of professionally competent assistance."  *Id.* at 690; *see also id.* at 687 (noting that

17  "counsel [must have] made errors so serious that counsel was not functioning as the

18  'counsel' guaranteed the defendant by the Sixth Amendment").  At this step, judicial

19

20       [5] Because Mr. Diaz's § 2255 motion consists entirely of ineffective assistance of counsel
    claims, his failure to raise the issues on direct appeal does not preclude the court from reviewing
21  the merits of his motion.  *See United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)
    (stating that claims of ineffective assistance of counsel can be raised for the first time in a § 2255
22  motion); *Massaro v. United States*, 538 U.S. 500, 504 (2003) (same); *United States v. Ross*, 206
    F.3d 896, 900 (9th Cir. 2000) (same).

1    scrutiny is highly deferential:  there is a strong presumption that counsel's performance

2    fell within the wide range of reasonably effective assistance.  *Id.* at 689.  To establish that

3    counsel's performance prejudiced the defense, a petitioner "must show that there is a

4    reasonable probability that, but for counsel's unprofessional errors, the result of the

5    proceeding would have been different.  A reasonable probability is a probability

6    sufficient to undermine confidence in the outcome."  *Id.* at 694; *see also id.* at 693 ("It is

7    not enough for the defendant to show that the errors had some conceivable effect on the

8    outcome of the proceeding.").  Thus, even if counsel made a professionally unreasonable

9    error, it does not warrant setting aside the judgment if the error had no effect on the

10   judgment.  *Id.* at 691.

11          The *Strickland* two-prong analysis applies to ineffective assistance of counsel

12   challenges concerning sentencing.  *See Daire v. Lattimore*, 812 F.3d 766, 767-68 (9th

13   Cir. 2016) (first citing *Glover v. United States*, 531 U.S. 198, 203-04 (2001); and then

14   citing *Lafler v. Cooper*, 566 U.S. 156 (2012)); *see also Treddenbarger v. United States*,

15   No. C20-1755JCC, 2021 WL 1854934, at *2 (W.D. Wash. May 10, 2021).  A court

16   addressing a claim of ineffective assistance of counsel need not address both prongs of

17   the *Strickland* test if the petitioner's showing is insufficient as to one prong.  *Strickland*,

18   466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of

19   lack of sufficient prejudice, which we expect will often be so, that course should be

20   followed."  *Id.*  Moreover, allegations that are speculative and conclusory are insufficient

21   to prove that counsel provided ineffective assistance.  *Blackledge v. Allison*, 431 U.S. 63,

22   74 (1977); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

1       The court has thoroughly reviewed each of the eight alleged instances of

2   ineffective assistance of counsel that Mr. Diaz alleges in his motion and concludes that

3   each lacks merit.  The court will now address each claim in turn.

4       1.  Claim 1

5       Mr. Diaz first claims that defense counsel should have objected to the U.S.

6   Probation Office's calculation of the number of child pornography images involved in his

7   case.  (*See* Mot. at 4-5.)  He alleges that the PSR calculated the number of images he

8   possessed to be over 12,000, but the number was actually closer to 2,300.  (*See id.*; Reply

9   at 10.)  Mr. Diaz says that he pointed out this alleged error to counsel, but that counsel

10  failed to correct the number before or during sentencing.  (*See* Mot. at 4-5.)  He claims

11  that, had his counsel corrected the number, he "would have been viewed in a more

12  favorable light."  (*See* Reply at 9.)

13      Mr. Diaz cannot, however, demonstrate that counsel's alleged failure to object

14  to the calculation caused him to suffer any cognizable prejudice under *Strickland*.  As the

15  Government correctly acknowledges, the calculation of the applicable sentencing

16  guidelines range would have been the same even if the PSR had used his number.  (*See*

17  Resp. at 9; Am. PSR at 6 (citing U.S.S.G. § 2G2.2(b)(7)(D).)  Moreover, the court's

18  analysis in determining the appropriate sentence would have been the same regardless of

19  whether the case involved 12,000 or 2,300 images.  (*See* Sentencing Tr. at 26:7-18.)  The

20  nature of the images, which depicted minors and sexually explicit conduct, was a

21  significant factor in the court's conclusion that the nature and circumstances of Mr.

22  Diaz's offense were "very significant and very serious."  (*See id.* (noting that "it makes a

1  difference, at least to me, what the nature of those photographs are").)  It also noted that

2  Mr. Diaz's case involved thousands of images in considering the seriousness of his

3  offense, a conclusion that would remain the same even if the court had considered his

4  number.  (*See id.*)  Additionally, Mr. Diaz admitted in his plea agreement that he

5  possessed "thousands of images and videos."  (*See* Plea Agreement at 6.)

6        In sum, even if defense counsel had told the court that the number of images was

7  closer to 2,300, the court's assessment of Mr. Diaz's offense would have remained the

8  same, as would his sentence.  Accordingly, Mr. Diaz fails to prove that there "is a

9  reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of

10  the [sentencing] proceeding would have been different."  *See Strickland*, 466 U.S. at 688.

11        Further, the court cannot conclude that defense counsel's failure to object to the

12  number of images fell outside the "wide range of reasonably effective assistance."  *See*

13  *Strickland*, 466 U.S. at 689.  "Even if a potentially viable defense [does] exist, '[t]he law

14  does not require counsel to raise every available nonfrivolous defense.'"  *See Walls v.*

15  *United States*, No. CR11-5408RJB, 2017 WL 823300, at *4 (W.D. Wash. Mar. 2, 2017)

16  (quoting *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1422 (2009)) ("An attorney may

17  reasonably choose not to pursue a particular defense, and 'is not required to have a

18  tactical reason . . . beyond a reasonable appraisal of a claim's dismal prospects.'").

19  Because the number of images would have had no impact on the applicable guidelines,

20  the court concludes that Mr. Diaz's attorneys were reasonable in spending their time

21  focusing on the evidence of mitigation at sentencing and attempting to portray Mr. Diaz

22  //

1   as someone who accepted responsibility for what he had done and deserved a second

2   chance.  (*See* Sentencing Tr.; Def. Sentencing Memo. (CR Dkt. # 64) (sealed).)

3        2.  <u>Claim 2</u>

4        Mr. Diaz next alleges that he prepared additional corrections to the PSR regarding

5   certain statements it included from Aaron Knell and Daniel Diaz, but that his counsel told

6   him it was "too late to make additional corrections."  (*See* Mot. at 5.)  He seems to find

7   fault with counsel's failure to make those additional corrections to the PSR.  (*See id.*)

8   However, Mr. Diaz fails to allege what those statements were, how they affected his

9   sentence, or that they were even considered at his sentencing.  (*See id.*; *see also*

10  Sentencing Tr.); *James*, 24 F.3d at 26 ("Conclusory allegations which are not supported

11  by a statement of specific facts do not warrant habeas relief.").  The sentencing hearing

12  transcript is devoid of any mention or consideration of statements made by Mr. Knell or

13  Mr. Daniel Diaz, and Mr. Diaz fails to show that he suffered any prejudice from defense

14  counsel's failure to correct such statements.  (*See generally* Sentencing Tr.; Mot.)

15  Moreover, the local criminal rules establish a deadline for the parties to object to the

16  PSR, and Mr. Diaz fails to establish why his counsel's adherence to those deadlines was

17  "outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at

18  690; Local Rules W.D. Wash. LCrR App. A; (*see also* Am. PSR at 18 (noting that

19  defense counsel did submit one set of corrections to the PSR and that the Probation

20  Office incorporated those corrections where appropriate)).

21       Therefore, the court is unable to conclude that defense counsel's performance "fell

22  below an objective standard of reasonableness" when they declined to make the

1    additional corrections that Mr. Diaz proposed.  *Strickland*, 466 U.S. at 688.  Nor can it

2    conclude that defense counsel's correction of such statements would have changed the

3    outcome of Mr. Diaz's sentencing.

4        3.  Claim 3

5        Mr. Diaz next alleges that he never signed a release permitting the comments from

6    Lonnie Kaman, his mental health counselor, to be considered as part of his sentencing.

7    (*See* Mot. at 5.)  While he does not say what these "comments" are, the court assumes

8    that he is referring to Ms. Kaman's statements in the PSR because the record is devoid of

9    any other mention of Ms. Kaman.  (*See id.*; Reply at 11; Am. PSR; *see also* CR Dkt.;

10   Sentencing Tr.)  Similar to claim 2, Mr. Diaz seems to argue that defense counsel's

11   performance was deficient and prejudicial because they failed to object to the inclusion of

12   her statements in the PSR.  (*See* Mot. at 5.)

13       However, the only comments of Ms. Kaman that were included in the PSR were

14   those confirming that Mr. Diaz was a client at one time, that she met with him twice, and

15   that she was no longer working with him.  (*See* Am. PSR at 9-10 (noting that Mr. Diaz

16   told the Probation Office that he was meeting with her during his presentence interview,

17   and they contacted her as a result).)  Mr. Diaz makes no effort to show why those

18   statements are prejudicial nor can he demonstrate that they were considered during

19   sentencing.  (*See generally* Mot.; Sentencing Tr. (making no mention of Ms. Kaman).)

20   Accordingly, Mr. Diaz's claim fails under *Strickland* because he does not point to any

21   specific prejudice that was caused by counsel's alleged failure to object.  *See United*

22   *States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998), *as amended* (Sept. 4, 1998)

1   (noting that while detailed evidence is not required, the petitioner must at least "make

2   specific factual allegations which, if true, would entitle him to relief" (citations omitted)).

3       4.   Claim 4

4       Mr. Diaz also finds deficient defense counsel's failure to challenge the sentencing

5   enhancements that applied to his case under U.S.S.G. § 2G2.2.  (*See* Mot. at 5-6; Am.

6   PSR at 6.)  Those enhancements included:  (1) a two-level upward deviation for material

7   involving minors; (2) a four-level upward deviation for material that portrays sadistic or

8   masochistic conduct or other violence; (3) a two-level upward deviation for an offense

9   that involved the use of a computer to commit the offense; and (4) a five-level upward

10  deviation for an offense that involved more than 600 images.  (*See* Am. PSR at 6.)  Mr.

11  Diaz seems to find fault with the fact that counsel did not prevent the court from seeing a

12  version of the PSR that included those enhancements.  (*See* Mot. at 6.)  This argument

13  fails because defense counsel could not have prevented the court from seeing that version

14  of the PSR; the Probation Office had a duty to submit the PSR to the court and to include

15  in it the enhancements applicable to his case under the sentencing guidelines.  (*See* Am.

16  PSR at 6-7, 12); U.S.S.G. § 2G2.2; Local Rules W.D. Wash. LCrR 32(d); *see also United*

17  *States v. Cronic*, 466 U.S. 648, 656 n.19 (1984) ("[T]he Sixth Amendment does not

18  require that counsel do what is impossible or unethical.").  Thus, while Mr. Diaz wished

19  for the court never to know about the possibility these enhancements might apply, such a

20  wish could never come true.  Moreover, defense counsel made every effort to negate

21  those applicable enhancements by urging the court to discount the impact of the various

22  sentencing enhancements and the resulting guideline range in Mr. Diaz's sentencing

1    memorandum.  (*See* Def. Sentencing Memo. at 2-9; *see also* Resp. at 10 (alleging that

2    defense counsel also urged the court to discount the impact of the various sentencing

3    enhancements in its objections to the draft PSR).)  Even if defense counsel had objected

4    to the application of the enhancements during sentencing, such objections would not have

5    changed the court's conclusion that those enhancements properly applied to Mr. Diaz's

6    offense.

7         Accordingly, the court cannot conclude that defense counsel "made errors that a

8    reasonably competent attorney acting as a diligent and conscientious advocate would not

9    have made."  *See Butcher v. Marquez*, 758 F.2d 373, 375-76 (9th Cir. 1985).

10        5.  Claim 5

11        Mr. Diaz claims that defense counsel failed to expunge allegations leveled against

12   him via an anonymous tip from his record.  (*See* Mot. at 6-7.[6])  He essentially argues that

13   defense counsel's failure to expunge the allegations "irreparably damaged" his

14   "otherwise excellent record on home detainment" and allegedly contributed to the

15   ultimate revocation of his bond.  (*See id.  Compare id.*, *with* Order Revoking Bond (CR

16   Dkt. # 88) (citing 9/10/20 Violation Pet. (CR Dkt. # 84); 2/20/20 Violation Pet. (CR Dkt.

17   # 47); 3/5/20 Violation Pet. (CR Dkt. # 53); 8/19/20 Violation Pet. (CR Dkt. # 75);

18   8/21/20 Violation Pet. (CR Dkt. # 78)) (noting all of the bond violations and factors that

19   ultimately contributed to the revocation of Mr. Diaz's bond).)  However, such allegations

20

21        [6] As the Government notes in its response, although Mr. Diaz identifies a specific
     individual who he believes is responsible for the tip, "the nature of the tip that gave rise to the
22   series of bond revocation hearings he alludes to in his petition was anonymous."  (*See* Resp. at
     10 n.5; Ex. 2 to Gov. Mot. to Revoke Bond (Dkt. # 41-1) (sealed) at 3.)

became part of the record and were not something that defense counsel could have prevented the court from seeing.  Defense counsel could not "expunge" such allegations from his record because there is no mechanism for doing so.[7]  Thus, the court declines to find defense counsel's performance deficient merely because it failed to do the impossible.  *See Cronic*, 466 U.S. at 656 n.19.

Mr. Diaz also fails to present any evidence that he was prejudiced by defense counsel's alleged errors.  He cannot establish that the events surrounding the anonymous tip and the hearings that followed had any bearing on his sentencing proceeding.  *See Strickland*, 466 U.S. at 694.  While the court discussed its concerns about Mr. Diaz's performance on pretrial supervision, it did not address the anonymous tip.  (*See* Sentencing Tr. at 27-30.)  Instead, the court's comments centered on the record of noncompliance that followed, including drug use, anger management issues, failure to respect the law, a tendency to blame others, and the unauthorized possession of a firearm.  (*See id.*)  Accordingly, even if defense counsel could have expunged the anonymous tip from Mr. Diaz's record, there is no evidence that doing so would have changed how the court viewed Mr. Diaz or his ultimate sentence.

6.  Claim 6

Mr. Diaz contends that defense counsel failed to challenge the alleged meritless claims of bond violations leveled by his supervising pretrial officer and prevent those

---

[7] Moreover, it is worth noting that defense counsel were actually successful in preventing Mr. Diaz's bond from being revoked after the anonymous tipster reported certain threats he allegedly made.  (*See* 12/20/19 Min. Entry (CR Dkt. # 44).)

1    allegations from being presented to the court.  (*See* Mot. at 7; Reply at 13-18 (detailing

2    the alleged meritless claims of bond violations).)  As the court noted above, such

3    allegations were not something that defense counsel could have expunged from his record

4    or prevented the court from seeing, and counsel's performance was not deficient for

5    failing to do the impossible.  *See Cronic*, 466 U.S. at 656 n.19.  Mr. Diaz does not

6    provide the court with any evidence that would lead it to conclude that defense counsel's

7    advocacy was objectively unreasonable.  To the contrary, the record supports the

8    Government's claim that defense counsel performed effectively in addressing Mr. Diaz's

9    supervising pretrial officer's claims of bond violations.  (*See* Resp. at 14.)  While his

10   bond was ultimately revoked due to Magistrate Judge Tsuchida's crediting of those

11   claims of bond violations during Mr. Diaz's September 2020 bond revocation hearing,

12   defense counsel painted Mr. Diaz in as favorable a light as possible at sentencing despite

13   the evidence of his misconduct while on bond.  (*See* Sentencing Tr.; Def. Sentencing

14   Memo.; 9/14/20 Min. Entry (CR Dkt. # 87); Order Revoking Bond (citing 9/10/20

15   Violation Pet.; 2/20/20 Violation Pet.; 3/5/20 Violation Pet.; 8/19/20 Violation Pet.;

16   8/21/20 Violation Pet.).)

17       7.  Claim 7

18       Mr. Diaz next argues that defense counsel should have challenged the

19   admissibility of his statement to law enforcement on the night of his arrest, presumably

20   through a motion to suppress.  (*See* Mot. at 8.)  However, he offers no explanation how

21   any statements he made to law enforcement had any material effect on the sentencing

22   outcome.  *Mejia-Mesa*, 153 F.3d at 929 (stating that a petitioner must "make specific

1    factual allegations which, if true, would entitle him to relief").  Moreover, Mr. Diaz

2    pleaded guilty and "[a]n unconditional guilty plea constitutes a waiver of the right to

3    appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional

4    defects."  (*See* Plea Agreement); *United States v. Rodriguez,* No. CR17-0229TOR, 2020

5    WL 7038590, at *3 (E.D. Wash. Nov. 30, 2020) (citing *Tollett v. Henderson*, 411 U.S.

6    258, 267 (1973)); *see also United States v. Lopez–Armenta*, 400 F.3d 1173, 1175 (9th

7    Cir. 2005); *United States v. Jackson*, 697 F.3d 1141, 1144 (9th Cir. 2012); *Daza-Cortez*

8    *v. United States*, No. C18-1608RAJ, 2021 WL 673486, at *4 (W.D. Wash. Feb. 22,

9    2021).  Thus, he waived the issue of the admissibility of his statement to law enforcement

10   by pleading guilty and by the express terms of his plea agreement.  *See Tollett*, 411 U.S.

11   at 267.  In light of his plea, defense counsel had no avenue through which to challenge

12   the admission of that statement.  *See id.*  Therefore, the court finds that defense counsel

13   were not deficient under *Strickland* for failing to do so.  *Cronic*, 466 U.S. at 656 n.19;

14   *Rodriguez*, 2020 WL 7038590, at *3.

15       8.  Claim 8

16       Finally, Mr. Diaz alleges that defense counsel failed to challenge "jurisdiction" in

17   his case, despite his status as a "public figure" and the media coverage of his arrest.  (*See*

18   Mot. at 8.)  Because Mr. Diaz did not explain what he meant by challenging

19   "jurisdiction," the Government interpreted his claim as "suggesting [that] defense counsel

20   failed to argue that his status as a local elected official somehow immunized him from

21   federal prosecution or otherwise cast doubt on this [c]ourt's jurisdiction over his case."

22   (*See* Resp. at 12 (citing Mot. at 8).)  In his reply, Mr. Diaz clarifies that he meant that his

counsel should have challenged jurisdiction because "there would be less prejudice against [him] in another jurisdiction" given that his case had been publicized in an Everett newspaper and on a local news radio station.  (*See* Reply at 19.)  This argument, however, is entirely without merit.  First, the court does not lack jurisdiction over Mr. Diaz's case merely because there might be "less prejudice against [him] in another jurisdiction."  (Reply at 19.)  Second, under the Federal Rules of Criminal Procedure a defendant may request that the court transfer the proceeding to another district for trial if "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."  Fed. R. Crim. P. 21.  Here, however, Mr. Diaz pled guilty.  (*See generally* Plea Agreement.)  Thus, even if he did produce evidence that "so great a prejudice against [him] exists" in this district, there was no reason for his counsel to move to transfer venue for trial because there was not going to be a trial following his guilty plea.[8]  Defense counsel were entirely reasonable to refuse to raise such an argument, and their refusal cannot be said to have prejudiced Mr. Diaz.  "If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade."  *Cronic*, 466 U.S. at

//

---

[8] To the extent that Mr. Diaz wished for his counsel to file a motion to transfer this case to another judge or magistrate judge because of the possibility that "there would be less prejudice against him," his ineffective assistance of counsel claim still fails.  Mr. Diaz offers no evidence that would support a finding that Magistrate Judge Tsuchida or the undersigned had prejudice against him and therefore fails to establish that his counsel were deficient for failing to challenge "jurisdiction" or that his counsel's alleged error had any material effect on the sentencing outcome.  (*See* Mot. at 8; Reply at 19); *Mejia-Mesa*, 153 F.3d at 929; *Strickland*, 466 U.S. at 689-94.

1    656 n.19.  Accordingly, defense counsel's performance as to this point fell within the

2    wide range of reasonably effective assistance.  *See Strickland*, 466 U.S. at 689-94.

3         In sum, there is nothing to suggest to the court that Mr. Diaz's counsel were

4    constitutionally deficient for failing to address the issues listed in his § 2255 motion.

5    Even if his counsel were ineffective in some way, nothing in the record suggests that

6    there is a reasonable probability that, but for counsel's alleged deficiencies, the result of

7    the sentencing proceeding would have been different.  Therefore, the court DENIES Mr.

8    Diaz's § 2255 motion.

9    **D.    Certificate of Appealability**

10        As a final matter, the court notes that a petitioner seeking post-conviction relief

11   may appeal a district court's dismissal of a 28 U.S.C. § 2255 motion only after obtaining

12   a certificate of appealability.  A certificate of appealability may issue only where a

13   petition has made "a substantial showing of the denial of a constitutional right."  28

14   U.S.C. § 2253(c)(2).  A petitioner satisfies this standard "by demonstrating that jurists of

15   reason could disagree with the district court's resolution of his constitutional claims or

16   that jurists could conclude the issues presented are adequate to deserve encouragement to

17   proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard,

18   the court concludes that Mr. Diaz is not entitled to a certificate of appealability.

19   **E.    Mr. Diaz's Third Motion to Appoint Counsel**

20        Mr. Diaz's third motion to appoint counsel requests that this court appoint counsel

21   to represent him in this action "in the interest of justice" because he does "[n]ot know[]"

22   //

1   if his reply brief was "prepared correctly, or if it could be detrimental rather than

2   advantageous to [his] litigation." (*See* 3d Mot. to Appoint at 1.)

3         There is no constitutional right to counsel in a post-conviction 28 U.S.C. § 2255

4   proceeding. *See Sanchez v. United States*, 50 F.3d 1448, 1456 (9th Cir. 1995). However,

5   the Rules Governing Section § 2255 Cases mandate appointment of counsel when an

6   evidentiary hearing is required, *United States v. Duarte-Higareda*, 68 F.3d 369 (9th Cir.

7   1995), and when necessary for effective discovery pursuant to Rule 6(a). *See* Rules

8   Governing Section § 2255 Cases Rule 8(c), Rule 6(a). As discussed above, the court

9   concludes that discovery and an evidentiary hearing are unnecessary because the detailed

10  record in this matter is a sufficient basis on which to decide Mr. Diaz's claims and

11  determine that he is entitled to no relief. *See supra* Section III.B.

12         Additionally, a district court may appoint counsel in a case brought under § 2255

13  at any time in the "interest of justice." 18 U.S.C. § 3006A(a)(2)(B); *Weygandt v. Look*,

14  718 F.2d 952, 954 (9th Cir. 1983); *Terrovona v. Kincheloe*, 912 F.2d 1176, 1181 (9th Cir.

15  1990). In determining whether to appoint counsel, "the district court must evaluate the

16  likelihood of success on the merits as well as the ability of the petitioner to articulate his

17  claims pro se in light of the complexity of the legal issues involved." *See Weygandt*, 718

18  F.2d at 954. Having reviewed the record in this case, the court does not find that justice

19  requires the appointment of counsel. The issues presented in Mr. Diaz's § 2255 motion

20  do not appear to be particularly complex, and his § 2255 motion and reply demonstrate

21  that he is able to effectively articulate his claims. (*See generally* Mot. (setting forth

22  ineffective assistance of counsel claims); Reply (discussing the same).) Thus, the court

1  DENIES Mr. Diaz's third motion to appoint counsel because Mr. Diaz has not

2  demonstrated that the "interest of justice" warrants appointment of counsel in this case.

3  **IV.    CONCLUSION**

4  For the foregoing reasons, the court DENIES Mr. Diaz's 28 U.S.C. § 2255 motion

5  to vacate, set aside, or correct his sentence (Dkt. # 1) and DENIES Mr. Diaz's third

6  motion to appoint counsel (Dkt. # 10).  The court DISMISSES this matter with prejudice

7  and DECLINES to issue a certificate of appealability.

8  Dated this 3rd day of February, 2022.

JAMES L. ROBART
United States District Judge

ORDER - 21